### BLEDSOE et al. v. MAGNOLIA PETROLEUM CO. et al.

#### No. 279.

District Court, E. D. Illinois.

Jan. 31, 1941.

Neil H. Thompson, of Mt. Vernon, Ill., for plaintiffs.

Craig & Craig, of Mattoon, Ill., for defendants.

WHAM, District Judge.

Plaintiffs, by the first count of their verified complaint, seek to have a certain oil and gas lease cancelled as null and void, or, if held valid to any extent, then held to have expired on August 25, 1939, and the defendant ordered to cancel and release same of record, return original lease to plaintiffs and pay plaintiffs' costs and attorneys' fees. By the second count they seek damages by reason of defendant's refusal to release said oil and gas lease and allege deprivation thereby of opportunities to sell or lease the premises for large sums of money.

The case was tried before the court without a jury. Proof was offered in support of the first count of the complaint. None in support of the second count. The case is now before the court upon oral and written evidence taken and heard at the trial, a written stipulation of facts, oral arguments of counsel and briefs subsequently submitted.

In substance, it is alleged in the first count of the complaint that the plaintiffs, on August 25, 1936, were the equitable owners of one hundred acres of land described in the complaint under a contract for a deed from Frank L. Stephenson who held the legal title; that on said date plaintiffs were approached by one R. S. Finn, agent of the defendants, who solicited the execution of an oil and gas lease on said premises; that plaintiffs agreed to lease to the Standard Oil Company for a consideration of $20 for a period of three years from said date, with provision for a $10 annual delay rental, provided the said Stephenson would also execute the lease; that plaintiffs were very busy and plaintiff M. L. Bledsoe was forced to leave immediately after terms of lease were agreed upon; that said Finn induced plaintiffs to sign a blank form of lease, representing to them that he would complete the lease according to the terms of the agreement, give them a copy, secure the signature of said Stephenson thereon and pay the consideration for the lease before the delivery of the lease would become completed; that plaintiffs did sign a blank form of lease and permitted said Finn to take it with him for the sole purpose of securing the signature of said Stephenson; that later Finn presented the lease to said Stephenson who refused to sign; that said Finn advised plaintiff Leota Bledsoe of such refusal and requested leave to retain the lease for a few days to make another attempt to secure the signature of said Stephenson; that Stephenson never signed the lease; that Finn never returned the lease to the plaintiffs nor paid any consideration therefor nor furnished a copy; that plaintiffs never did acknowledge the deed or deliver same for purpose of conveying any title thereunder; that on November 29, 1939, plaintiffs acquired legal title to said premises by paying balance due on said contract to said Stephenson; that soon thereafter they learned that there was of record in Jefferson County, Illinois, an oil and gas lease purporting to be from themselves to one P. E. Haralson, acknowledged before R. S. Finn, assigned by Haralson on June 7, 1937, to the defendant Magnolia Petroleum Company and purporting to have been executed for a con-

sideration of $2.50, to run for ten years; that on February 23, 1940, plaintiffs gave defendant notice of forfeiture and demand for release of said oil and gas lease of record and return of original lease to them but that defendant has failed to release said lease or return such instrument.

The more I study the evidence, the more I am impelled to the conclusion that plaintiffs' case is the outgrowth of inexcusable, self-confessed carelessness, of afterthought and faulty memories. According to the testimony of the plaintiffs, because Mr. Bledsoe was in a hurry and Mrs. Bledsoe busy, they signed, without reading, a blank form of oil and gas lease presented to them by Finn, a total stranger. Plaintiffs further testify that they entrusted the signed blank form of lease to the stranger to be filled out by him later, out of their presence, in accordance with a verbal understanding arrived at in a hurried conversation, as follows: Term of lease three years, consideration $20 and delay rental of $20 per year. They say they did not intend to make delivery of the lease to Finn, yet they kept no receipt or scrap of paper to show it not to be a complete delivery. They say that later they indorsed, without reading, a check and a certificate of deposit for delay rentals without knowing what they were for or from whom the money came. The plaintiffs' testimony on these points constitute their confession of carelessness. How much of the confession is true and how much untrue is an issue of fact.

In conflict with plaintiffs' testimony that the agreed delay rental was $20 per annum is an allegation in their verified complaint that the agreed delay rental was $10 per annum. Then, too, the evidence shows they accepted $10 in 1937 and $10 in 1938, which sums were paid to them in full of annual delay rental which fact they could have known by the exercise of ordinary diligence. The lease, as recorded, shows delay rental $10 per annum, which said Finn testified was the amount agreed upon and placed in the lease before plaintiffs signed it.

In their complaint plaintiffs allege that the agreed consideration for the lease was $20 and that they were paid no consideration. They testified at the trial that the agreed consideration was $20, that they were paid $2 and that Finn promised to bring the balance of $18 at a later time. It developed in the evidence that at the time the lease was turned over to Finn, plaintiff M. L. Bledsoe signed and gave Finn a receipt for $2.50 as consideration for the lease which is the amount of the consideration recited in the lease, as recorded. Bledsoe denies his signature on the receipt but the greater weight of the evidence shows that it is his signature. Finn testified that $2.50 was the consideration agreed upon and that he inserted that amount in the lease in the presence of plaintiffs before they signed it.

Plaintiffs say the lease was given Finn solely to enable him to attempt to obtain Mr. Stephenson's signature and to become a delivery only if Mr. Stephenson's joinder was obtained. Yet, Mr. Bledsoe accepted the consideration for the lease and gave an unconditional written receipt therefor.

Neither plaintiff made any effort to repossess the lease after they knew Stephenson "blew up" and refused to join in the lease. To the contrary, they indicated their acquiescence in and acceptance of the fact that the lease was actually in effect for three years up to August 25, 1939, by their acceptance of the delay rentals in the amount tendered. In their notice of forfeiture dated February 23, 1940, they state that they executed an oil and gas lease, which was filed for record December 15, 1936, and recorded in Deed Record 125 at page 450 and which did by its terms expire on August 25, 1939. On that ground they demanded that the lease be released of record, the original returned to them, and warned of damages if lease were not released and the original returned as demanded. This does not accord with their claim that there had been no delivery of the lease. While the said notice contained statements charging forgery and alterations of portions of the lease, and payment of only a portion of the agreed consideration and delay rentals, the essential nature of the instrument was a statutory demand for the release of record by reason of the expiration of the true term of an effective lease, with notice of damages in the event of failure to make such release.

Plaintiffs say the lease was to be for three years instead of ten years, as it appears on the record. The evidence is beyond dispute that at the time the lease was signed there appeared plainly in a prominent position on the face of the lease the printed sentence set apart in a separate paragraph, "It is agreed that this lease

shall remain in force for a term of ten years from this date, and as long as oil or gas or either of them is produced from said land by lessee." The exercise of the least care or diligence would have given them this knowledge. Both of them could read and ample opportunity was afforded.

After consideration of the evidence and the circumstances, including the conduct of the parties, as shown by the evidence, I have come to the conclusion that the principal facts of the case are contrary to plaintiffs' contention and that plaintiffs' testimony is in large part founded on misunderstanding and a faulty recollection of what occurred. Perhaps the most obvious proof of the weakness of their recollection is the receipt signed by Mr. Bledsoe acknowledging the receipt of $2.50 as the consideration for the lease. Both plaintiffs testified that they have no memory of such a receipt yet it plainly bears the signature of M. L. Bledsoe. They do not contend that they signed a receipt in blank as they did the lease, to be filled out by the stranger. Its existence represents a clear lapse of memory and fairly proves that the consideration recited in the lease is the consideration actually agreed upon. This, in view of their testimony on the point, casts doubt upon the reliability of their recollection as to other matters that occurred there more than four years ago. It seems quite clear, as above pointed out, that they were also wrong about the agreed amount of delay rental and that the amount appearing in the lease is the agreed amount.

The question of the term of the lease was, no doubt, the subject of discussion in view of the nature of plaintiffs' title. Though the proof in the case is not clear as to the time the plaintiffs had under their contract of purchase to complete payment for the land, there seems to have been a conviction on the part of plaintiffs, as well as Mr. Stephenson, that they had three years. It was made clear in the conversation that while they could lease the land even though Mr. Stephenson did not join, the lease would not be effective in such case after three years, if plaintiffs lost the land. Perhaps the conversations on this point predominate the minds of the plaintiffs in their recollection of the agreed term of the lease. It seems improbable that defendant's agent would feel justified by the state of plaintiffs' title in taking a lease for a shorter period than the customary ten years. He knew the lease would be valueless and ineffective regardless of its term, if plaintiffs lost the land but would be good for the full term if they kept the land. The conversation on this point, as related by Finn, that he told Mr. Bledsoe he was taking ten-year leases from everybody he dealt with and that Mr. Bledsoe replied that he didn't care about having anything different from his neighbors, is entirely reasonable and corroborated by the fact that the form of lease he was using had the provision for the ten-year term printed on the face of it in plain sight when plaintiffs signed the lease.

Lastly, I am of opinion that the greater weight of the evidence fails to show that the lease was actually signed in blank by plaintiffs. On this point the testimony of plaintiffs stands against the testimony of Finn. The plaintiffs are vitally interested parties. Finn has no actual interest in the case except to maintain his good name. He is no longer employed by defendant Magnolia Petroleum Company. Plaintiffs' testimony is corroborated by Stephenson who admitted that he saw the lease only casually. Finn is corroborated by Weiner who says he observed both Finn and M. L. Bledsoe writing at the table, but still more by reason and ordinary experience. It is scarcely conceivable that landowners, persons of intelligence, in full possession of their faculties· and with very considerable business experience, as the evidence shows the plaintiffs were, would sign in blank and hand over to a stranger an oil and gas lease as a conditional delivery without keeping some memorandum of the transaction. Such action does not accord with reason or with ordinary human conduct. Then, too, when it is remembered that a written receipt for the amount of consideration now stated in the lease was signed at the same time the lease was signed it seems reasonable that the amount of such consideration then appeared in the lease. It is known that the term of the lease was printed thereon when it was signed. The evidence is clear that the amount of delay rental which appears in the face of the lease is in accordance with the agreement of the parties and there was no reason for omitting it. The name of the depository had to be obtained from the Bledsoes and there was no reasonable excuse for omitting it.

Then, too, Finn's statement that he was taking leases for the defendant in the

name of P. E. Haralson and that before going out to take leases he had printed with a pen the name of P. E. Haralson in a group of lease forms, including the one used in taking the Bledsoe lease, to make sure that he would spell the name correctly, not only seems a reasonable explanation of the fact that the name of P. E. Haralson is written in printed letters while the remainder of the inserted matter is written in longhand, but the whole circumstance is strong evidence that said name was in the lease when it was signed.

Since I have found the facts in the case against the plaintiffs there is no need for discussing the law.

The complaint must be and is dismissed. Defendant's counsel will prepare and submit, upon notice, formal findings and conclusions with form of decree.